UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Criminal Action No. 5: 19-130-DCR-1 |
| | ) | |
| V. | ) | |
| | ) | |
| RICHARD C. DUERSON, | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Defendant. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Defendant Richard Duerson was convicted on November 27, 2019, following a jury trial of: (1) conspiracy to distribute 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine and 500 grams or more of a mixture or substance containing a detectable amount of cocaine in violation of 21 U.S.C. § 846 (Count 1); (2) possession with intent to distribute a mixture or substance containing a detectable amount of 50 grams or more of methamphetamine in violation of 21 U.S.C. § 841(b)(1)(B) (Count 2); and (3) possession with intent to distribute a mixture or substance containing a detectable amount of cocaine in violation of 21 U.S.C. § 841(b)(1)(C) (Count 3). [Record No. 48] His sentencing hearing is presently scheduled for May 22, 2020.[1]

---

[1]     Duerson's original counsel was allowed to withdraw following trial. [*See* Record Nos. 62 and 63.] Prior to withdrawal, Duerson submitted objections to the PSR in a pro se capacity. [Record No. 61]   A second attorney, Mark Wohlander, was then appointed to represent Duerson pursuant to the Criminal Justice Act.   At the direction of the defendant, attorney Wohlander submitted three objections to the PSR by letter dated March 21, 2020.   First, Wohlander objected to the drug quantity attributed to Duerson as reflected in paragraph 18 of the PSR.   Second, Wohlander objected to the PSR reflecting a mandatory minimum term of 180 months incarceration, based on a prior serious felony conviction.   Third, Wohlander

The United States has filed a motion for an upward departure from the Criminal History Category ("CHC") III assigned to Duerson in his Presentence Investigation Report ("PSR") pursuant to United States Sentencing Guidelines Manual ("U.S.S.G.") § 4A1.3(a). Alternatively, the government requests an upward variance to account for the defendant's serious criminal history and the likelihood that he will commit other serious offenses when released from custody.   [Record No. 58]   The United States contends that a CHC III substantially under-represents the defendant's criminal history and the likelihood of recidivism

---

objected to forfeiture of $10,470, reflecting the proceeds of drug transactions.   These objections are addressed in the Second Addendum to the PSR.

Duerson's second attorney, Mark Wohlander, moved to withdraw from the case after attorney Jason Rapp filed an appearance in the matter on March 25, 2020.  [*See* Record No. 75, 76, and 77.]  On May 12, 2020, attorney Rapp filed a Sentencing Memorandum on behalf of Defendant Duerson.  [Record No. 90]  In relevant part, attorney Rapp withdraws two of the objections filed by Wohlander at the direction of the defendant.

Regarding the first objection which concerns the drug quantity attributed to the defendant, Rapp states that "Richard [Duerson] withdraws this objection as he agrees that the standard of proof beyond a reasonable doubt required for conviction by a jury, vis-à-vis the charges and drug quantity amounts, is substantially higher than the standard of preponderance of the evidence."  [Record No. 90, p. 2] With respect to the third objection concerning forfeiture of $10,470.00, Rapp states that "Richard [Duerson] withdraws this objection as well as he acknowledges and understands that this money was previously forfeited in Madison Circuit case number 19-CR-00433-1."  [*Id.*]

Based on the foregoing, Defendant Duerson maintains only one objection to the PSR; that is, whether he is subject to an enhanced punishment as a result of a prior felony conviction in state court (identified in paragraph 42 of the PSR as Madison Circuit Court Case No. 14-CR-00270).  Rapp does not argue that the assault conviction does not constitute a serious felony or that he served greater than twelve months imprisonment for the offense.  Instead, he contends that "the basis for this objection is that Richard [Duerson] states that he was misled into believing he would qualify for consideration of shock probation if he entered a guilty plea to the terms of the plea agreement."  Because that motion was subsequently denied in the state court proceeding, he argues that he received ineffective assistance of counsel which is tantamount to having no counsel at all.  This argument will be addressed and the objection resolved herein.

and that a departure to a CHC IV, which would carry a new Guidelines range of 180-210 months, would be appropriate under § 4A1.3(a).[2]   Duerson's second appointed counsel responded to the motion on March 13, 2020, indicating that a CHC III is appropriate, arguing that the United States' motion relies too heavily on pending state court charges.  [Record No. 68]  The Sentencing Memorandum filed by Duerson's recently-retained counsel incorporates the prior response by reference, indicates that these two state court cases have been dismissed, and contends that two other previously-dismissed charges should not factor into a departure analysis.  [Record No. 90, p. 4]

The Court agrees that an upward departure is warranted.  As a result, the government's motion will be granted, in part.  The Court will reserve ruling on a variance pending the May 22, 2020 sentencing hearing.[3]   Further, for the reasons discussed more fully below, the defendant's one remaining objection to the PSR (identified in the Second Addendum to the PSR as defendant's objection number two) will be overruled.

## I.

The United States Probation Office has determined that Duerson's total offense level is 32 and his CHC is III based on five criminal history points calculated according to U.S.S.G. § 4A1.1.  [PSR ¶¶ 26, 44-45, 90].  This would generally provide for a range of imprisonment of

---

[2]      It is worth noting that the United States is correct to request that the Court depart to a CHC IV rather than to a sentence within the range that results from a CHC IV.  A "departure" is "for purposes of § 4A1.3 (Departures Based on Inadequacy of Criminal History Category), [the] assignment of a criminal history category other than the otherwise applicable criminal history category, in order to effect a sentence outside the applicable guideline range."  U.S.S.G. § 1B1.1, cmt. 1(F)(iii).

[3]      This opinion fulfills U.S.S.G. § 4A1.3(c)(1)'s requirement that the Court issue a written specification of basis for an upward departure.

151-188 months.  U.S.S.G. § 5A (Sentencing Table).  However, the United States filed a notice of statutory enhancement pursuant to 21 U.S.C. § 851, indicating that a conviction would carry an enhanced statutory penalty under 21 U.S.C. § 841(b)(1) because Duerson has a prior conviction for a serious violent felony.  [Record No. 32] Thus, his subsequent conviction on Count 1 carries a statutory minimum sentence of fifteen years' imprisonment under 21 U.S.C. § 841(b)(1)(A).  [PSR ¶ 89; 21 U.S.C. §§ 841(b)(1)(A) and 846]  The PSR accounts for this minimum penalty, setting the adjusted Guidelines range at 180-188 months.  [PSR ¶ 90]

As noted above, Duerson has objected to the statutory enhancement in his sentencing memorandum.  [Record No. 90, p. 3]  He claims that he was denied his constitutional right to counsel in the proceeding that the United States claims warrants the enhancement: a 2014 Kentucky state court conviction for assault in the first degree. At the time of this conviction, Duerson also entered a guilty plea to two counts of wanton endangerment in the first degree, and assault in the fourth degree.  [*See* Record No. 32; PSR ¶¶ 42, 89.]  Specifically, he argues that his counsel in that proceeding was constitutionally deficient because Duerson's decision to plead guilty was premised on counsel's misrepresentations that he would be eligible for shock probation.  [Record No. 90, p. 3]

And although Duerson only objects to the imposition of the statutory enhancement, the Court notes that the validity of this prior conviction would have considerable bearing on his CHC (and a departure analysis) because the PSR calculates that the defendant has three criminal history points based on that conviction.  [PSR ¶ 42]  Thus, Duerson would have a CHC II if the Court were to disregard the subject conviction.  [PSR ¶¶ 42, 45; U.S.S.G. § 5A (Sentencing Table)]

That said, "a defendant may collaterally attack a prior conviction used for purposes of sentence enhancement only if (1) such attack is provided by statute, or (2) such attack is a constitutional one premised on a lack of counsel." *United States v. Reed*, 141 F.3d 644, 652 (6th Cir. 1998) (citing *Custis v. United States*, 511 U.S. 485, 493-97 (1994); *United States v. Gonzales*, 79 F.3d 413, 426-27 (5th Cir. 1996)). The United States Court of Appeals for the Sixth Circuit has recognized that these two narrow exceptions to the prohibition on collateral attacks at sentencing also apply to challenges to prior convictions that influence criminal history points and Guidelines ranges. *E.g.*, *United States v. Harder*, 772 F. App'x 324 (6th Cir. 2019); *see also United States v. Aguilar-Diaz*, 626 F.3d 265, 269 (6th Cir. 2010).

However, a "lack of counsel" claim under these circumstances is not what Duerson believes it to be. A who collaterally attacks such a prior conviction must demonstrate that he was not appointed counsel at all rather than prove that counsel was deficient. *E.g.*, *United States v. Snow*, 634 F. App'x 569, 572 (6th Cir. 2016) ("Instead [the defendant] can challenge the 2002 conviction only by arguing that he lacked counsel altogether in the 2002 case . . . . But [he] was undisputedly represented by counsel throughout his state-court proceedings, including his guilty plea . . . . That fact itself defeats his claim." (internal citations omitted)); *United States v. Jenkins*, 528 F. App'x 483, 486 (6th Cir. 2013) ("Jenkins and Jahns do not claim they lacked counsel in the Kentucky cases, only that their counsel rendered ineffective assistance due to conflicts of interest. This argument thus does not fall within the exception.") (citations omitted); *Cole v. United States*, No. 10-4029, 2013 WL 6068030, at *1 (6th Cir. Jan. 25, 2013) ("To prevail on such a challenge, a defendant must demonstrate a complete denial of the right to appointed counsel established in *Gideon v. Wainwright*, 372 U.S. 335 (1963)) (citation omitted).

Thus, although Duerson's argument, if successful, would affect his CHC and Guidelines range, it does not do so in this case because Duerson was actually represented by counsel in the Kentucky case at issue. [Record Nos. 90, p. 3 and 90-1] Based on the foregoing, the Court will proceed to consider the government's departure motion using the criminal history score provided in the PSR and his second objection to the PSR will be overruled.[4]

## II.

The Guidelines provide that "[i]f reliable information indicates that the defendant's CHC substantially under-represents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit other crimes, an upward departure may be warranted." U.S.S.G. § 4A1.3(a)(1). The Guidelines further state that such information may include:

> (A) Prior sentence(s) not used in computing the criminal history category (e.g., sentences for foreign and tribal convictions).
> (B) Prior sentence(s) of substantially more than one year imposed as a result of independent crimes committed on different occasions.
> (C) Prior similar misconduct established by a civil adjudication or by a failure to comply with an administrative order.
> (D) Whether the defendant was pending trial or sentencing on another charge at the time of the instant offense.
> (E) Prior similar adult criminal conduct not resulting in a criminal conviction.

---

[4]     The prior conviction that is the subject of this objection is outlined in paragraph 42 of the defendant's PSR.  On November 26, 2014, Duerson received sentences of seven years imprisonment for assault in the second degree, five years imprisonment for wanton endangerment in the first degree, five years for wanton endangerment in the first degree, and 12 months in jail for assault in the fourth degree, causing minor injury. All terms were directed to run concurrently.  On January 28, 2015, a motion for shock probation was denied.  Duerson was placed on parole on April 27, 2016. He was discharged from parole on March 26, 2018. The facts giving rise to these charges and resulting sentences are outlined more fully at page 8 of this Memorandum Opinion and Order.

U.S.S.G. § 4A1.3(a)(2).  Although "[a] prior arrest record itself shall not be considered for purposes of an upward departure under this policy statement," a sentencing court may consider a prior arrest "when the PSR provides specific facts surrounding the arrest."  *United States v. Matheny*, 450 F.3d 633, 642 (6th Cir. 2006) (citing U.S.S.G. § 4A1.3(a)(3)).

A sentencing court must adequately explain its reasoning for a departure under § 4A1.3. *E.g.*, *United States v. Potts*, 947 F.3d 357, 371 (6th Cir. 2020).  However, the Sixth Circuit has "rejected 'a mechanistic approach to departures.'"  *United States v. Herrera-Zuniga*, 571 F.3d 568, 588  (6th Cir. 2009) (quoting *United States v. Thomas*, 24 F.3d 829, 833 (6th Cir.1994)). The sentence imposed as a result of a departure must accord with the goals identified by Congress in 18 U.S.C. § 3553(a), but there is no strict method a court must follow to determine whether a CHC is appropriate or a departure is necessary.  *See id.* (citing *United States v. Brown*, 371 F.3d 854, 860 (6th Cir. 2004).

> Generally speaking, this requires that the sentencing judge consider "the seriousness of the defendant's past criminal conduct, the likeliness of recidivism, prior similar adult conduct not resulting in criminal convictions, previous lenient sentences for offenses, whether the sentence will have a deterrence on future criminal conduct, the necessity of isolating the defendant from the community and the length of time necessary to achieve rehabilitation, if rehabilitation is possible."

*Id.* (quoting *Thomas,* 24 F.3d at 833 (citing *United States v. Joan*, 883 F.2d 491, 496 (6th Cir.1989))).

### III.

Duerson's CHC III results from five criminal history points stemming from three adult convictions and resulting sentences.  However, the points and category under-represent the seriousness of Duerson's criminal history and the likelihood that he will commit other crimes.

Using the Guidelines and Sixth Circuit framework for departures, the Court finds that a departure to a CHC IV is appropriate.

Duerson receives a criminal history point for his 2010 Kentucky state court attempted receiving stolen property (a firearm) conviction for which he was sentenced to 360 days' imprisonment, conditionally discharged for two years. [PSR ¶ 41 (citing U.S.S.G. § 4A1.1(c))] He was then convicted in 2014 on Kentucky charges of assault in the first degree, two counts of wanton endangerment in the first degree, and assault in the fourth degree. [*Id.* at ¶ 42] He was sentenced to a total term of seven years' imprisonment (and was paroled in 2016), resulting in three criminal history points. [*Id.* citing U.S.S.G. § 4A1.1(a)] Finally, he was convicted in 2017 of operating a motor vehicle a motor vehicle under the influence of alcohol, resulting in a one day jail sentence, a $200 fine, and one criminal history point under § 4A1.1(c). [*Id.* at ¶43] His five criminal history points initially place him in CHC III (4-6 criminal history points). U.S.S.G. § 5A (Sentencing Table).

Several reasons weigh in favor of a departure to CHC IV. As the United States indicates, the state court system was notably lenient regarding Duerson's sentences that result in criminal history points. [Record No. 58, pp. 3-4] Duerson's 2014 conviction that resulted in a seven-year sentence involved an incident at a gentleman's club. [PSR ¶ 42] Duerson left the club after punching a woman but later returned to the establishment. When staff would not let him reenter, he fired an automatic handgun through the door, hitting one person in the leg. [*Id.*] He was paroled in 2016 after serving 17 months of his sentence for this serious misconduct. [*Id.*] His 2017 DUI conviction and sentence did not result in the revocation of parole, and he was discharged from parole in 2018. [*Id.*] These sentences were lenient given the seriousness of the 2014 gentleman's club battery and shooting incident. They accordingly

weigh in favor of a departure.  *See Herrera-Zuniga*, 571 F.3d at 588 (noting that leniency of previous sentences and the seriousness of past criminal conduct are factors a court should consider when addressing an upward departure).

Further, the Guidelines expressly account for departures where "the defendant was pending trial or sentencing on another charge at the time of the instant offense."  U.S.S.G. § 4A1.3(a)(2)(D).  Duerson was arrested on January 23, 2019, and charged under Kentucky law with: three counts of convicted felon in possession of a handgun; two counts of wanton endangerment in the first degree; two counts of unlawful imprisonment in the first degree; assault in the fourth degree; and persistent felony offender in the second degree.  [PSR ¶ 47]  These charges stemmed from an incident in which Duerson allegedly went to his then-girlfriend's house after she told him she had been sexually assaulted by a third-party burglar, blamed his girlfriend for stealing money he kept there, held her at gunpoint, and then held her minor son at gunpoint.  [*Id.*]

Even assuming these charges have been dropped as Duerson argues,[5] he was on pretrial release when he committed the instant offenses.  It is clear that the seriousness of this January

---

[5]     Duerson's memoranda almost exclusively address the United States' arguments that advocate for consideration of this arrest and another March 2, 2019 arrest relating to a purportedly dismissed state court case.  [*See* Record Nos. 68, pp. 1-2 (citing PSR ¶¶ 47-48) and 90, p. 4.]  The Court declines to consider the March 2, 2019 Kentucky arrest reflected in Paragraph 48 of the PSR because the resulting drug charges stem from the same conduct for which Duerson was convicted in this case and it is not entirely clear whether he was pending trial on the state charges when he committed the instant federal offenses around the same time.  However, it is arguable that the Court could validly consider the non-drug-related matters described in Paragraph 48 of the PSR because the defendant may have been pending trial on charges related to these matters "at the time of the instant offense" for the purposes of § 4A1.3(a)(2)(D).  After all, Duerson was convicted in this case of a conspiracy that occurred from March 2 to March 8, 2019.  He continued to perpetrate the conspiracy from March 3 to March 8 after his March 2 arrest on the state charges.

arrest and the charges alleged against him did not deter him from trafficking in large quantities of narcotics in early March 2019.  This conduct demonstrates that the likelihood of recidivist criminal behavior is high and evidences the need for a significant sentence that will deter such conduct.

Additionally, the Guidelines provide that a court may consider "[p]rior sentence(s) not used in computing the criminal history category." U.S.S.G. § 4A1.3(a)(2)(A).  The Guidelines explicitly note that such sentences include foreign or tribal convictions.  *Id.*  But a court may also consider sentences that fail to produce additional criminal history points under § 4A1.2(e)(3) because they are too old where they indicate that the applicable CHC substantially under-represents a defendant's criminal history.  *See*, *e.g.*, *United States v. Polly*, 06: 10-cr-025-ART, 2011 WL 1086056, at *3 (E.D. Ky. Mar. 22, 2011) (citing § 4A1.3(a); *United States v. Jennings*, No. 08–6413, 2011 WL 71459, at *2 (6th Cir. Jan. 10, 2011)).

Duerson has seven such adult sentences spanning a period from 2000 to 2005.  [PSR ¶¶ 33-37, 39-40], and several of these sentences resulted from particularly concerning offenses. One, a 2000 Ohio drug abuse conviction, involved marijuana, a Schedule I controlled substance.  [PSR ¶ 33]  A 2001 Ohio conviction involved an assault.  [*Id.* at ¶ 34]  Another 2003 conviction involved a felony attempted carry of a concealed weapon.  [*Id.* at ¶ 36]  The PSR also indicates that police found two bags of marijuana in the defendant's car during the incident that resulted in this felony conviction.  [*Id.*]  While these and the other four convictions from 2000 to 2005 are not sufficient to support a departure standing along, their number and seriousness are additional indicators of an under-represented criminal history.  They weigh in favor of a departure when considered with other justifications for a CHC IV.

- 10 -

Finally, the Court may consider prior similar criminal conduct that did not result in a conviction when determining whether an upward departure is warranted. U.S.S.G. § 4A1.3(a)(2)(E); *Herrera-Zuniga*, 571 F.3d at 588. Prior arrests may be considered when a PSR sufficiently and reliably details surrounding circumstances. *See* U.S.S.G. § 4A1.3(a)(1); *Matheny*, 450 F.3d at 642. Although Duerson has a variety of prior arrests and charges that did not result in convictions, the PSR details the circumstances of two that are related to drug trafficking and thus involve conduct similar to that for which the defendant was convicted in this case. In 1998, then eighteen-year-old Duerson was arrested by an officer in Illinois after the officer observed him engaging in a street-level cocaine transaction. [PSR ¶ 54] Duerson was also arrested and charged in Illinois in 2010 with possession of more than 2.5 grams of cannabis and admitted to the police that he was in possession of two "dime bags."[6] [*Id.* at ¶ 61]

Like the uncounted prior convictions, these instances alone may not justify a departure. But they reliably indicate that Duerson has been involved in drug trafficking throughout his adult life when considered with his convictions in this case and those that do not count toward his criminal history point calculation. And most significantly, his CHC III is based on five points from three convictions that did not involve drug trafficking offenses. Duerson's initial CHC fails to account for his history of drug trafficking and thus substantially under-represents his criminal history as well as his likelihood of drug crime-based recidivism.

---

[6]     Duerson's latest sentencing memorandum also states two other incidents cited by the United States resulted in charges that were dismissed and do not weigh in favor of a departure. [Record No. 90, p. 4 (citing PSR ¶¶ 57, 65)] The Court has not considered these charges in its analysis because they do not relate to drug trafficking activities.

In summary, multiple factors demonstrate that an upward departure to CHC IV is warranted in this case.  Considering the seriousness of the gentleman's club incident, his parole, continued unlawful conduct, and the early termination of his parole, the state courts were lenient with Duerson regarding the sentences that result in criminal history points.  He was also on pretrial release for separate very serious charges when he committed the offenses for which he was convicted in this case.  He has seven adult convictions that do not count toward his criminal history score, and three of these involved drugs or violence.  Finally, he has multiple other arrests that reliably indicate a pattern of drug trafficking activities throughout his adult life.  The PSR's CHC calculation does not reflect these drug-related activities.  The Court therefore finds that these considerations, in the aggregate, warrant an upward departure to a CHC IV.

## IV.

A departure under § 4A1.3 must accord with the sentencing goals articulated by Congress in 18 U.S.C. § 3553(a).  *Herrera-Zuniga*, 571 F.3d at 588.  A departure may not be greater than necessary to achieve these goals articulated by the factors listed in § 3553(a).  *Id.* Here, the departure to CHC IV (and the resulting Guidelines range of 180-210 months) comports with the § 3553(a) factors.

A sentence within this range would particularly accord with § 3553(a)(1), the factor that accounts for "the nature and circumstances of the offense and the history and characteristics of the defendant."  The departure in this case is warranted because the criminal history of the defendant is not adequately represented by a CHC III.  The departure, therefore, directly furthers the purpose of this § 3553(a) goal.

The departure also directly serves the purposes of § 3553(a)(2)'s considerations.  The defendant's extensive prior criminal history particularly demonstrates a heightened need for "adequate deterrence to criminal conduct."  18 U.S.C. § 3553(a)(2)(B).  Additionally, the defendant's history of drug trafficking and violent conduct demonstrates a heightened need to "protect the public from further crimes of the defendant."  18 U.S.C. § 3553(a)(2)(C).

The departure in this case provides a Guidelines range that accords with, and directly supports, the goals articulated by Congress in § 3553(a).  A sentence within the new range of 180-210 months is sufficient and not greater than necessary to comply with the § 3553(a) factors.

## V.

In summary, the Court agrees with the United States that an upward departure to a CHC IV is appropriate in this case.  A CHC IV and total offense level of 32 set a Guidelines range of 168-210 months' imprisonment.  U.S.S.G. § 5A (Sentencing Table).  The statutory minimum of 180 months continues to apply, and Duerson's applicable Guidelines range after the departure is 180-210 months' imprisonment.  Accordingly, it is hereby

**ORDERED** as follows:

1.     The United States' motion for an upward departure to a criminal history category of IV pursuant to U.S.S.G. § 4A1.3 [Record No. 58] is **GRANTED**.  The Court reserves its ruling regarding the government's alternate request for an upward variance until the time of the sentencing hearing.

2.     The Court departs upward to a criminal history category of IV.  Duerson's Guidelines range of imprisonment is now effectively 180-210 months.

3.      The defendant has withdrawn the first and third enumerated objections to his PSR.  Therefore, these objections are **DENIED** as moot.

5.      The defendant's second objection to the PSR is **DENIED** for the reasons outlined above.

Dated:  May 20, 2020.

Danny C. Reeves, Chief Judge
United States District Court
Eastern District of Kentucky