UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | Criminal Action No. 5: 19-130-DCR |
| Plaintiff/Respondent, | ) | and |
| | ) | Civil Action No. 5: 22-278-DCR |
| V. | ) | |
| | ) | |
| RICHARD C. DUERSON, | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Defendant/Movant. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Defendant/Movant Richard Duerson has filed a motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255.  [Record No. 167]  He has also filed two motions for an evidentiary hearing on the claims contained in his § 2255 motion, and a motion to amend the claims contained in his § 2255 motion.  [Record Nos. 192, 202, 216]  The matter was referred to Magistrate Judge Edward B. Atkins for issuance of a Report and Recommendation ("R&R") pursuant to 28 U.S.C. § 636(b)(1)(B).  Magistrate Judge Atkins issued his report on February 2, 2023, recommending that Duerson's petition for habeas relief and motions for an evidentiary hearing be denied.  [Record No. 212]

Both parties filed objections to the Magistrate Judge's R&R.[1]  [Record Nos. 214, 215] This Court makes a *de novo* determination of those portions of a magistrate judge's

---

[1] The United States notes in its filing that it does not object to the conclusions in the Magistrate Judge's Report and Recommendation and only seeks to clarify the analysis in two respects. [Record No. 214, p. 2, 5]  Although the government does not seek to disturb the Magistrate Judge's ultimate disposition, the Court will nonetheless address the clarifications that the government raises.

- 1 -

recommendation to which particularized objections are made, 28 U.S.C. § 636(b)(1)(C), but "[i]t does not appear that Congress intended to require district court review of a magistrate's factual or legal conclusions, under a *de novo* or any other standard, when neither party objects to those findings." *Thomas v. Arn*, 474 U.S. 140, 150 (1985). Additionally, courts review objections that merely "reiterate [a party's] original arguments" for clear error. *United States v. Ickes*, No. 1:15-CR-00004, 2017 WL 1017120, at *1 (W.D. Ky. Mar. 15, 2017) (citing *Manigualte v. C.W. Post of Long Island Univ.*, 659 F. Supp. 2d 367, 372 (E.D.N.Y. 2009)).

Many of Duerson's objections to the R&R reiterate the defendant's claims from his initial § 2255 motion and, therefore, need only be reviewed for clear error. [*See* Record No. 215.] However, the Court has conducted a *de novo* review of the entire matter (including both parties' objections) and agrees with Magistrate Judge Atkins' determination that Duerson is not entitled to any relief. Accordingly, his § 2255 motion, motions for an evidentiary hearing, and motion to amend will be denied.

## I. Background

Officers from the Richmond Police Department executed a search warrant on Duerson's apartment on March 2, 2019. There, they discovered methamphetamine, cocaine, a cutting agent, unidentified pills that were "in the shape of the 'Superman' shield and imprinted with the Superman 'S,'" cash, and several firearms. *See United States v. McFarland*, No. 20-5310, 2021 WL 7367157, at *1 (6th Cir. Oct. 4, 2021). Specifically, Officer Daniel Toth's citation report states that officers found "approximately 73.5 ggw [grams gross weight] of suspected methamphetamine in a zip lock bag, approximately 661 ecstasy pills, and a gun magazine with hair on it, all inside a white Apple bag." [Record No. 167-1, p. 12] Duerson

was arrested Duerson and taken to the Madison County jail.  *McFarland*, 2021 WL 7367157, at *1.

Duerson made several calls to co-conspirator Jennifer McFarland while incarcerated. *Id.*  In part, he asked that she retrieve personal belongings from his apartment during one call, mentioning either a gray safe or a gray vase.  *Id.*  Officer Toth obtained a warrant to search McFarland's apartment after listening to the recordings of the co-defendants' conversations. Upon executing the second warrant at McFarland's residence on March 8, 2019, officers discovered cocaine, methamphetamine, a black firearm wrapped in a bedsheet, and more "Superman" pills.  *Id.*

A federal grand jury indicted Duerson for one count of conspiring to distribute methamphetamine and cocaine in violation of 21 U.S.C. § 846 (Count 1) and three counts of possessing with the intent to distribute controlled substances in violation of 21 U.S.C. § 841(a)(1)(B).  One count involving methamphetamine (Count 2), one count involving cocaine (Count 3), and one count involving fentanyl (Count 4).  [Record No. 1, pp. 1-3] McFarland also was indicted for one count of conspiring to distribute controlled substances and two counts of possessing with the intent to distribute controlled substances.  [*Id.*]

Attorney Elizabeth Hughes was appointed to represent Duerson at the district court level.  During the pretrial conference, the Court granted the government's motion to dismiss Count 4 against Duerson.  [Record No. 44]  Hughes moved to continue the trial date on October 21, 2019.  [Record No. 34]  During a hearing on the motion to continue, Hughes stated that she needed more time to review discovery with Duerson.  [Record No. 114, p. 7]  She further indicated that she met with the defendant the day before the hearing to ensure that he had

reviewed the discovery in his case.  [*Id.*]  The undersigned granted the defendant's motion to continue and postponed the trial for one month.  [Record No. 39]

During trial, the government introduced recordings of Duerson's phone calls with McFarland, including the call in which he discussed a gray safe or gray vase.  [Record No. 111, p. 66]  Counsel for McFarland questioned Officer Toth regarding whether he understood what was said during the call, asking him if he acknowledged the "difference between discussing a safe and having someone direct you to move it." [Record No. 111, p. 117]  Hughes also questioned Officer Toth over his interpretation of the call in the following exchange:

> HUGHES: Would you agree with me that the first jail call we listened to, Mr. Duerson could have been saying they were looking for keys? Do you remember that first phone call?
>
> OFFICER TOTH: Yes, ma'am.
>
> HUGHES: And he said, if you can't find them, I believe your testimony was or your interpretation was, then look in the safe.  Is that what you understood?
>
> OFFICER TOTH: He mentioned something about the safe, yes.
>
> HUGHES: Could he have been saying look in the vase?
>
> OFFICER TOTH: It's possible.
>
> HUGHES: Did you listen to it closely?
>
> OFFICER TOTH: They – when I listened to it closely, they mentioned a gray safe.
>
> HUGHES: Well, Ms. McFarland mentioned a gray safe – and question mark – and then Mr. Duerson went on to another subject.  They were talking about the keys.  He said – I think he said "vase," but I'll play it for you again and we can listen to it.

[*Id.* at pp. 106-07]

Hughes also discussed Duerson's jail call with Task Force Officer Scott McIntosh ("TFO McIntosh"), again mentioning that it is not clear in the recording whether Duerson

references a "vase" or "safe." [Record No. 112, p. 142] She asked TFO McIntosh, "would you agree with me that whether it says safe or a vase, there was no instruction in that portion of the jail call we listened to by Mr. Duerson for Ms. McFarland to take the safe to her house?" [Id.] Hughes made the a similar point during closing arguments, indicating that "the distinction [between vase and safe] doesn't even make a difference, because the conversation was that Ms. McFarland could not find [Duerson's] keys . . . . Whichever word is used, Mr. Duerson is not saying transport this, take custody of it. He says, can't find the keys? Look there." [Record No. 124, p. 5]

Officer Toth testified that as further proof of the co-defendants' conspiracy, he had heard from other narcotics detectives that McFarland "stor[ed] drugs, guns, and money for Mr. Duerson" to assist in the defendant's trafficking efforts. [Id. at pp. 104-05] Hughes objected to the statements from other detectives as inadmissible hearsay, but the Court overruled the objection because Hughes' question invited the officer's statement. [Id.] Hughes addressed Officer Toth's hearsay statements during closing arguments, noting that because there was no "firsthand knowledge" that McFarland's residence served as a "stash house" for Duerson, the jury should harbor a "reasonable doubt with respect to [Officer Toth's] theory." [Record No. 124, p. 8]

The government called Duerson's former landlord, Wesley Frazier, who testified that he saw McFarland at Duerson's apartment "a few times" and that he once unlocked the door to the apartment so that McFarland could retrieve the defendant's belongings. [Record No. 112, pp. 51-52] Frazier also testified that he witnessed Duerson's friend remove a "rifle or something" that was "sticking out from under a blanket or a piece of clothing of some kind" from the defendant's apartment. [Id. at p. 64]

- 5 -

The parties delivered closing arguments on the third day of the defendants' trial. [Record No. 47]  During the United States' closing argument, the attorney for the government contended that ample evidence supported the charge that the defendants were co-conspirators. The prosecutor specifically mentioned that the firearm that Frazier witnessed being removed from Duerson's apartment was "the same firearm" that detectives found in McFarland's apartment.  [Record No. 113, pp. 21-22]

Following deliberations, the jury found the defendants guilty of all counts.  [*Id.*] Hughes later withdrew as counsel of record and attorney Mark Wohlander was appointed as substitute counsel.  [Record Nos. 62, 64]

The United States moved for an upward departure pursuant to Section 4A1.3 of the United States Sentencing Guidelines after receiving the defendant's Presentence Investigation Report ("PSR").  [Record No. 58]  It argued that an upward departure was warranted because "the Defendant's criminal history category substantially underrepresent[s] the seriousness of the Defendant's criminal history and the likelihood of recidivism."  [*Id.* at p. 1]  Specifically, the government noted that Duerson's criminal history was misleading because he had repeatedly been "probated, paroled, or released on bond conditions" after engaging in conduct "involv[ing] the use of firearms, threatening and assaulting behavior toward other individuals, or a combination thereof."  [*Id.* at pp. 9, 10]  Although Duerson's PSR recommended a base offense level of 32 and criminal history category of III (resulting in a guidelines range of 180 to 188 months), the United States requested that the defendant be placed in criminal history category of IV, with a resulting guidelines range of 180 to 210 months.

Attorney Wohlander filed a response to the United States' motion on Duerson's behalf, asserting that an upward departure was not warranted because the government's reliance on

pending criminal charges was improper under the sentencing guidelines. [Record No. 68] Shortly thereafter, Duerson retained attorney Jason Rapp to represent him at sentencing and on appeal. [Record No. 188, p. 1] Rapp incorporated Wohlander's response to the government's motion for an upward departure and further objected to the motion in a Sentencing Memorandum. [Record No. 90] The Court, however, granted the government's motion and applied a criminal history category of IV in determining an appropriate sentence.

During Dureson's sentencing hearing, the Court confirmed that Duerson had sufficient opportunity to review the PSR with his attorney. [Record No. 116, pp. 2-3] Rapp explained that Duerson had reviewed his PSR with Wohlander, and Duerson indicated that he was satisfied with the review. [*Id.*] Rapp reiterated the defendant's objection to applying an upward departure during allocution [*Id.* at pp. 9-11], but the Court applied the upward departure and imposed a sentence of 200 months' imprisonment. [Record Nos. 101, 116, p. 32]

Duerson appealed his conviction to the United States Court of Appeals for the Sixth Circuit. *See United States v. McFarland*, No. 20-5310, 2021 WL 7367157 (6th Cir. Oct. 4, 2021). The appeals court found that sufficient evidence supported Duerson's conviction for conspiring to distribute controlled substances: namely, his phone calls with McFarland, the "Superman" pills that were discovered in the defendants' apartments, and the amount of drugs recovered from both apartments. *Id.* at *5. Regarding the jail call recording, the Sixth Circuit noted that the jury "was in the best position to determine whether they discussed a safe or whether, as Duerson contends, they discussed a vase. The jury obviously concluded that they discussed a safe, and, as stated above, the officers found a safe in McFarland's closet that

contained much of the contraband that was in her apartment. The jury was entitled to find that this safe was the same safe that McFarland and Duerson had discussed." *Id.*

Duerson timely filed this § 2255 motion. [Record No. 167] All but one of his claims involve his trial and appellate attorneys' allegedly ineffective assistance. [Record No. 167, pp. 5-9] Duerson also contends that the "accumulation of errors" in his case amounts to a due process violation. [*Id.* at p. 14]

The United States objects to the relief sought by the defendant. [Record No. 187] Regarding Duerson's ineffective assistance claims, the government asserts that the defendant has failed to show that either Hughes or Rapp provided ineffective assistance under the Sixth Amendment. But even if counsel's conduct was objectively unreasonable, the government maintains that counsel's choices do not amount to a Sixth Amendment violation because their conduct did not affect the outcome of Duerson's trial, sentence, or appeal. [*Id.* at pp. 8-10] And the government argues that Duerson's cumulative error claim is misplaced because his "allegations of ineffective assistance are groundless." [*Id.* at p. 12 (citing *United States v. Brumley*, No. CR-14-32, 2017 WL 10637727, at *16 (E.D. Ky. Aug. 9, 2017))].

The United States has also submitted an affidavit from Rapp in which he provides an account of his efforts in preparing for the defendant's sentencing and appeal. [Record No. 188] Rapp states that he "extensively discussed all potential appellate issues" with the defendant, including the possibility that the Court would apply an upward departure to the defendant's sentence. [*Id.* at pp. 1-2] Rapp further indicates that he thoroughly reviewed the PSR with the defendant and noted that both he and Duerson's previous attorney, Mark Wohlander, objected to the government's motion for an upward departure. [*Id.* at pp. 2-3

Magistrate Judge Atkins concluded in his R&R that Duerson's § 2255 motion should be denied.  [Record No. 212]  He recommended denying the defendant's claims that Hughes was ineffective because Duerson could not demonstrate that his attorney's conduct constitutes prejudice.  [*See id.* at pp. 7-19.] Having found no merit to the defendant's allegations of ineffective assistance regarding his trial attorney, Magistrate Judge Atkins concludes that Duerson's claims that Rapp was ineffective for failing to appeal trial counsel's choices is equally unavailing.  [*Id.* at pp. 19-20]   Next, the Magistrate Judge rejected Duerson's cumulative error claim because the defendant's allegations of ineffective assistance forming the basis of that claim were "groundless." [*Id.* at p. 21 (citing *Brumley*, 2017 WL 10637727, at *16).]  Finally, Magistrate Judge Atkins concludes that an evidentiary hearing is not necessary because the defendant's factual allegations are contradicted by clear evidence in the record.  [*Id.* at pp. 21-22]

## II.  Legal Standard

Title 28 of the United States Code, § 2255, grants a federal prisoner a statutory right to collaterally attack his sentence.  Under this statutory section, a prisoner may move a court that sentenced him to "vacate, set aside or correct the sentence" upon showing that the sentence was unlawful, that the court lacked jurisdiction, that the sentence was "in excess of the maximum authorized by law," or that the sentence is "otherwise subject to collateral attack."

"A motion brought under § 2255 must allege one of three bases as a threshold standard: (1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid." *Weinberger v. United States*, 268 F.3d 346, 351 (6th Cir. 2001).  In other words, relief under § 2255 is only warranted "where a petitioner has shown 'a fundamental defect which inherently

results in a complete miscarriage of justice.'" *Miller v. United States*, 562 F. App'x 485, 490 (6th Cir. 2014) (citing *Davis v. United States*, 417 U.S. 333, 346 (1974)).

## III. Analysis

### A. Request to Consider Reply Brief

As a threshold matter, the Court addresses Duerson's claim that the Magistrate Judge erred in not considering his reply to the government's response to his § 2255 motion. [Record No. 215, p. 1] As explained previously, the defendant was not entitled to file a reply brief. [Record Nos. 173, 197] Multiple courts have held that ruling on a petitioner's § 2255 motion without considering his reply brief does not violate the petitioner's constitutional right to due process. *See, e.g., Bell v. United States*, No. RDB-12-3042, 2015 WL 4561837, at *3 (D. Md. July 27, 2015) ("[T]he rules governing § 2255 motions suggest that reply briefs are permitted but not required, and Petitioner has not identified any source of law to support his contention that disposition without a reply constitutes a due process violation."); *Person v. Ercole*, No. 08-CV-7532, 2015 WL 4393070, at *2 (S.D.N.Y. July 16, 2015) ("[D]isposition of a case without the filing of a reply does not violate a litigant's constitutional due process right."); *Sarsak v. United States*, No. 03-00039-RT, 2011 WL 13327342, at *2 (C.D. Cal. Apr. 13, 2011) (holding that "no due process violation occurs where a movant is not afforded the opportunity to file a reply" and recognizing that "the statute itself, 28 U.S.C. § 2255 contemplates the court ruling without the benefit of an opposition or a reply").

### B. Ineffective Assistance of Trial Counsel

A defendant's right to effective assistance of counsel is violated when counsel's performance falls below an objective standard of reasonableness and the defendant is prejudiced by counsel's performance. *Henness v. Bagley*, 766 F.3d 550, 554 (6th Cir. 2014)

(citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)).  To show prejudice, a movant must establish ""that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Strickland*, 466 U.S. at 694. Here, Duerson argues that he is entitled to relief because Hughes provided constitutionally ineffective assistance.  [Record No. 167, pp. 5-9]

Under the first prong of *Strickland*, courts "take care to avoid 'second-guessing'" an attorney's discretion and "strongly presume" that counsel "made all significant decisions in the exercise of reasonable professional judgment."  *Lundgren v. Mitchell*, 440 F.3d 754, 759-60 (6th Cir. 2014); *see also Strickland*, 466 U.S. at 690.  To satisfy the second prong, the movant must demonstrate that counsel's deficient performance would have changed the outcome of the proceeding, considering "the totality of the evidence before the judge or jury." *Strickland*, 466 U.S. at 695-96.  A movant must establish his claim of ineffective assistance by a preponderance of the evidence.  *Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006).

Duerson has set out nine subclaims, contending that his trial attorney was constitutionally ineffective.  Each will be addressed in turn.

### 1.  Admission of the Jail Call Recording

Duerson's assertion that Hughes failed to challenge the government's interpretation of the recording is flatly contradicted by the record.  Trial transcripts show that Hughes noted the ambiguity in the recording twice while cross-examining government witnesses and once during her closing argument.  [*See* Record Nos. 94, pp. 106-07, 95, p. 142, 163, p. 2.]  Thus, the defendant's claim that Hughes "ignor[ed] . . . [the] issue with the recording" is simply inaccurate.  [Record No. 167, p. 5]

Hughes acted reasonably by identifying the ambiguity in the recording and leaving the ultimate interpretation to the members of the jury, who "w[ere] in the best position to determine whether they discussed a safe or whether, as Duerson contends, they discussed a vase." *McFarland*, 2021 WL 7367157, at *5. Moreover, she did not act unreasonably by failing to object to the admission of the jail call recording because the recording was relevant and admissible under Rule 401 Federal Rules of Evidence. *See United States v. Sanders*, 404 F.3d 980, 984 (6th Cir. 2005) ("Evidence is 'relevant' under Rule 401 when it has 'any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.'") (citing Fed. R. Evid. 401)); *see also United States v. Smith-Kilpatrick*, 942 F.3d 734, 741 (6th Cir. 2019) (finding that records of phone calls between co-defendants were relevant and admissible to "prove [the defendant's] involvement [in a conspiracy] because they made it more probable that she participated in these activities"). The Sixth Circuit has recognized that recordings are not admissible only "if the unintelligible portions are so substantial as to render the recording as a whole untrustworthy." *United States v. Robinson*, 707 F.2d 872, 876 (6th Cir. 1983); *see also United States v. Wilson*, 578 F.2d 67, 69 (5th Cir. 1978) (noting that district court did not abuse its discretion in admitting a recording with inaudible portions because "much of [the tape] can be heard clearly").

The jail calls were relevant regarding Duerson's participation in the drug conspiracy with McFarland. Moreover, the calls were not so unintelligible as to be inadmissible. Duerson objects to the latter finding, but he fails to present any authority supporting his claim that an ambiguity involving a single phrase renders an entire recording untrustworthy. [Record No. 215, p. 2] Hughes' decision not to object to the admission of the recording "cannot rise to the

level of ineffective assistance because . . . that evidence was admissible in any event." *United States v. Sanders*, 404 F.3d 980, 986 (6th Cir. 2005) (citation omitted).

Next, Hughes' failure to object to the admission of the recording did not prejudice Duerson because the evidence would have been admitted regardless. *See Hough v. Anderson*, 272 F.3d 878, 897 (7th Cir. 2001) ("If evidence admitted without objection was admissible, then the complained of action fails both prongs of the *Strickland* test: failing to object to admissible evidence cannot be a professionally 'unreasonable' action, nor can it prejudice the defendant against whom the evidence was admitted."). As Hughes recognized in her closing argument, the recording was admitted to shed light on Duerson's relationship with McFarland, not to highlight whether he mentioned a safe or a vase. [Record No. 124, p. 5] As such, the "distinction [between mentioning a safe or a vase] doesn't even make a difference." [*Id.*]

And even if the vase/safe ambiguity rendered the recording inadmissible, the Magistrate Judge correctly concluded that the admission of the call did not prejudice the defendant because sufficient evidence supported his conspiracy conviction apart from the recording. [Record No. 215, p. 2] As the Sixth Circuit recognized, in addition to evidence of the co-defendants' phone conversations, Duerson's conviction was supported by the presence of "Superman" pills in both his and McFarland's apartments and by the amount of drugs found in both apartments. *See McFarland*, 2021 WL 7367157, at *5.

Duerson objects to the finding that sufficient evidence supported his conviction on two grounds. First, he claims that the presence of the "Superman" pills does not prove that he and McFarland conspired together because the "Superman" logo is not a unique marking. [Record No. 215, p. 4] But the defendant misunderstands the relevance of this evidence. The evidence of the pills supports his conviction not because the Superman logo is unique, but because the

same pills were found at both locations.  [*See* Record No. 97, p. 34 (noting that the presence of the "Superman" pills in McFarland's apartment is a "fingerprint" connecting her residence with Duerson's apartment).]

Duerson also claims that his conspiracy conviction lacks support without evidence of the recording because the jail call is the only evidence proving that he knowingly joined the conspiracy.  [Record No. 215, p. 5]  To the extent the defendant suggests that the government is required to submit direct proof of his intent to conspire with McFarland, that assertion is inaccurate.  *See United States v. Mosely*, 53 F.4th 947, 957 (6th Cir. 2022) (noting that proof of a defendant's agreement to join a conspiracy "need not be 'recorded or even express'; it can be inferred from his conduct") (citation omitted).  The government presented circumstantial evidence that Duerson conspired with McFarland which, as the Sixth Circuit found, was sufficient to uphold the defendant's conspiracy conviction, even without evidence of the co-defendants' phone calls.

Thus, Duerson's first claim fails because the admission of the recording did not prejudice the outcome of his trial.

### 2.  Failure to Object to Indictment

Next, Duerson claims that Hughes provided ineffective assistance by failing to object to his indictment.  [Record No. 167, p. 6]  He asserts that his indictment should have been dismissed because the government misrepresented facts to the grand jury by stating that he had "instructed and discussed McFarland retrieving a gray colored [sic] safe" and that he possessed fentanyl.  [*Id.*]  This claim fails because such a challenge to the indictment would have been meritless.

- 14 -

The Sixth Circuit has long recognized that courts should be wary of evaluating the sufficiency of grand jury proceedings.  *See United States v. Short*, 671 F.2d 178, 182 (6th Cir. 1982) (stating that criminal cases should not be "further attenuated by preliminary trials concerning the adequacy of grand jury proceedings") (citation omitted); *see also United States v. Landham*, 251 F.3d 1072, 1080 (6th Cir. 2001) ("Courts evaluating motions to dismiss [an indictment] do not evaluate the evidence upon which the indictment is based.").  And as Magistrate Judge Atkins correctly concluded, Duerson has presented no evidence to support his allegations that the grand jury heard the recording of his discussion with McFarland or that their decision to indict him was based on that evidence alone.

However, assuming *arguendo* that Officer Toth made a misleading statement regarding the jail call to the grand jury, such a single misrepresentation would not support dismissing the defendant's indictment.  *See United States v. Markey*, 693 F.2d 594, 596 (6th Cir.1982) ("[The] validity of an indictment is not affected by the type of evidence presented to the grand jury, even though that evidence may be incompetent, inadequate or hearsay.").  Duerson's indictment was legally sufficient because it satisfactorily "assert[ed] facts which in law constitute an offense; and which, if proved, would establish prima facie the defendant's commission of that crime."  *United States v. Super. Growers Supply, Inc.*, 982 F.2d 173, 177 (6th Cir. 1992).

Additionally, Duerson's claim that he was prejudiced by alleged statements that he possessed fentanyl fails.  Regardless of whether the grand jury heard that he possessed fentanyl, that information did not prejudice Duerson because the government dismissed the fentanyl possession charge prior to trial.  [Record Nos. 44]

### 3.  Eliciting Hearsay Evidence

Duerson's third claim alleges that Hughes was ineffective by "eliciting . . . the introduction of damaging . . . hearsay evidence."  [Record No. 167, p. 6]  The Sixth Circuit agreed with the defendant in finding that Hughes' question to Officer Toth "elicited the hearsay about which Duerson now complains."  *McFarland*, 2021 WL 7367157, at *6.  But regardless of whether Hughes' actions were reasonable, Duerson's cannot show prejudice under *Strickland*'s second prong.

Courts consider the "totality of the evidence before the judge or jury" when determining whether a defendant was prejudiced by an attorney's alleged ineffective assistance.  *Strickland*, 466 U.S. at 695.  Magistrate Judge Atkins correctly concluded that sufficient evidence supports Duerson's conspiracy conviction without considering Officer Toth's testimony.  *See McFarland*, 2021 WL 7367157, at *5 (noting that phone calls between co-defendants, the presence of "Superman" pills in both apartments, and the number of pills found in the defendants' apartments supports Duerson's conspiracy conviction).  Accordingly, the Court rejects Duerson's argument that "no other competant [sic] evidence linked Mr. Duerson and Ms. McFarland as engaging in a conspiracy" apart from Officer Toth's hearsay statements. [Record No. 215, p. 7]

Because there is no probability that "absent the testimony elicited from [Officer Toth], the result in this case would have been different," Duerson's third ineffective assistance claim fails.  *United States v. Farrell*, 13 F. App'x 46, 48 (2d Cir. 2001).

### 4.  Failure to Object to Prosecutorial Misconduct

Duerson claims that Hughes was ineffective for failing to object to purported prosecutorial misconduct by the government at trial.  [Record No. 167, p. 6]  He contends that

the attorney for the United States engaged in such misconduct by stating that "illegal items confiscated from [McFarland's] apartment . . . came from [Duerson's] apartment." [*Id.* at p. 11] Duerson explains that the government's misleading statements supported his conspiracy conviction by suggesting that items recovered from McFarland's apartment, particularly a long firearm, were found in his department. [*Id.*]

Courts apply a two-pronged test to determine whether a prosecutor's alleged misconduct renders a defendant's trial fundamentally unfair. *See Slagle v. Bagley*, 457 F.3d 501, 515-16 (6th Cir. 2006) (citing *United States v. Carter*, 6th Cir. 2001). First, the court "determines whether the prosecution's conduct or remarks were improper." *Id.* at 516. If so, the court weighs four factors in determining whether the improper acts or statements were sufficiently flagrant to warrant reversal. They are: "(1) whether the evidence against the defendant was strong, (2) whether the conduct of the prosecution tended to mislead the jury or prejudice the defendant; (3) whether the conduct or remarks were isolated or extensive; and (4) whether the remarks were made deliberately or accidentally." *Id.* (citation omitted). Duerson's claim fails because the prosecutor's comments were not improper.

Duerson argues that the prosecutor intentionally misled the jury into thinking that he and McFarland conspired together by stating that "the same firearm [in McFarland's apartment]. . . went from [Duerson's] residence like the other items." [*See* Record Nos. 113, p. 22, 167, p. 11, 215, p. 9.] But contrary to the defendant's arguments, the prosecutor's assertions could not have misled the jury because those statements were supported by testimony from Officer Toth and TFO Harrison.

The United States' clarification to the Magistrate Judge's report on this matter is well taken. [*See* Record No. 214, pp. 1-2.] Specifically, TFO Harrison testified that detectives

- 17 -

found a black rifle in Duerson's apartment on March 2, 2019, and Officer Toth testified that officers removed a black rifle from McFarland's apartment on March 8, 2019. [Record Nos. 111, p. 86, 112, p. 69] The prosecutor's statement regarding the rifle was not improper, as prosecutors do not engage in misconduct when they "forcefully assert reasonable inferences from the evidence." *Cristini v. McKee*, 526 F.3d 888, 901 (6th Cir. 2008).

And even if the prosecutor's statement regarding the rifle was incorrect, this single, isolated remark would not constitute to prosecutorial misconduct. *See Slagle*, 457 F.3d at 527 (finding that prosecutor's fifteen prejudicial comments did not constitute prosecutorial misconduct in part because "[a]ll of the comments were isolated"). Because Hughes could not have raised a successful claim of prosecutorial misconduct, Duerson cannot properly claim that she was constitutionally ineffective by failing to do so.

### 5. Failure to Disclose Pictures

Duerson alleges that Hughes was ineffective by failing to disclose pictures of a "gray vase" to the Court. [Record No. 167, p. 7] He contends that submitting pictures of a vase in his apartment would confirm that "the 'gray vase' did exist," discrediting the government's interpretation of his phone call with McFarland. [*Id.*] But the defendant's claim falls short under both prongs of *Strickland*.

Hughes did not act unreasonably in failing to submit pictures because Duerson that has not demonstrated to exist. As the government correctly notes, the only photographs of a vase that have been submitted were taken in Duerson's *brother's* apartment and do not clearly show a gray vase. [*See* Record No. 187, p. 7, 195.] But even if such photographs did exist, Hughes' decision not to introduce them was not unreasonable because, as explained above, she adequately addressed the vase/safe distinction at trial. In short, Duerson has not demonstrated

that Hughes failed to "exercise[] reasonable professional judgment" by not submitting photographs of his apartment that could confirm the existence of a gray vase. *Lundgren*, 440 F.3d at 760. Further, submission of the purported photos would not have affected the outcome of the case because the vase/safe distinction was not essential to the defendant's conviction. [*See* Record No. 124, p. 5.]

### 6. Failure to Impeach Officer Toth

Duerson next contends that Hughes provided constitutionally ineffective assistance by failing to impeach Officer Toth at trial. He asserts that Officer Toth provided inconsistent testimony in three respects:

> (1) stating that "40 or 50" pills were found on a dresser in Duerson's apartment, when the uniform citation reported that "661 ecstasy pills" were found "all inside a white Apple bag";
>
> (2) reporting in his search warrant affidavit that Duerson instructed McFarland to retrieve a gray safe from his apartment, which the government later conceded was not true; and
>
> (3) stating in his search warrant affidavit that McFarland "could not give a definitive answer" when asked if her apartment contained evidence of criminal activity, when McFarland had affirmatively denied any evidence of illegal activity in her interview with Officer Toth.

[Record Nos. 167, p. 7, 167-1, pp. 13, 17, 18]

Magistrate Judge Atkins correctly found that the "minor factual discrepancy" in Officer Toth's statements about the location of the seized pills does not suggest that the officer's testimony was false. [Record No. 212, p. 14 (citing *Hughes v. Palmer*, No. 18-1226, 2018 WL 2305815, at *3 (6th Cir. May 21, 2018))] *See United States v. Lochmondy*, 890 F.2d 817, 822 (6th Cir. 1989) ("[M]ere inconsistencies in testimony by government witnesses do not establish knowing use of false testimony."). Accordingly, Duerson cannot demonstrate that Hughes

acted unreasonably in failing to impeach the officer's statements about the location of the pills or that her decision prejudiced him.

Additionally, Hughes' questioning of Officer Toth does not constitute ineffective representation. Hughes attempted to undermine the officer's interpretation of the recording by asking whether Duerson could have mentioned a vase rather than a safe. [*See* Record No. 111, pp. 106-07.] And as the United States correctly notes in its objections to the Magistrate Judge's report, McFarland's attorney also questioned Officer Toth regarding his understanding of Duerson's statements to McFarland. [Record No. 214, p. 4 (citing Record No. 111, p. 117)] She was not ineffective for not duplicating the impeachment efforts of McFarland's counsel.

Finally, Hughes was not ineffective by failing to impeach Officer Toth for statements in the search warrant regarding his interview with McFarland. The United States correctly notes in its objections to the Magistrate Judge's report that Rule 613(b) of the Federal Rules of Evidence permits a party to impeach a witness with a prior inconsistent statement only when the previous statement is "irreconcilably at odds" with a statement made during trial. [Record No. 214, p. 4 (citing *United States v. Harris*, 881 F.3d 945, 949 (6th Cir. 2018))] Officer Toth did not testify about the report of his conversation with McFarland in the search warrant affidavit. Thus, Hughes could not have impeached his testimony with evidence of the search warrant under Rule 613(b).

Moreover, Hughes' actions did not prejudice the defendant. Officer Toth's testimony was not the sole or the key evidence supporting Duerson's conviction. Accordingly, he cannot demonstrate that the jury would have reached a different verdict if Officer Toth's credibility had been undermined. *See, e.g., Pollard v. Parris*, No. 3:20-00017, 2020 WL 2526533 (M.D. Tenn. May 18, 2020) (noting that trial attorney's failure to impeach a witness did not prejudice

- 20 -

the defendant because the witness' testimony "was not the only evidence the State possessed against the Petitioner").

### 7. Failure to Impeach Wesley Frazier

Duerson also claims that Hughes was ineffective for failing to impeach Wesley Frazier. [Record No. 167, p. 8]  According to Duerson, Frazier's trial testimony (i.e., that he opened the door to Duerson's apartment for McFarland) contradicts TFO McIntosh's report, which indicates that McFarland opened Duerson's apartment door alone *after* Frazier had given her the keys.  [*Id.*]  Additionally, Duerson claims that Frazier's testimony that McFarland retrieved electronics from Duerson's apartment was inconsistent with the witness' statement to TFO McIntosh that he did not remember if McFarland retrieved anything from the defendant's apartment.  [*Id.*]  This claim also fails because Duerson has not demonstrated that he was prejudiced by Hughes' questions.

As Magistrate Judge Atkins notes in his R&R, the government used Frazier's testimony to explain how certain items belonging to Duerson (including a long gun wrapped in a sheet) were later found in McFarland's apartment.  But excluding Frazier's testimony, the government presented sufficient evidence linking items in Duerson's apartment to his co-defendant's residence.  Specifically, testimony from TFO Harrison and Officer Toth suggests that the same firearm found in Duerson's apartment was later found in McFarland's apartment. [Record No. 111, pp. 39-40, 112, pp. 98-99]  Moreover, Frazier's testimony did not prejudice the defendant because sufficient evidence supports Duerson's conspiracy conviction apart from the physical evidence found in the co-defendants' apartments.

### 8.  Failure to Impeach TFO McIntosh

Duerson contends that his attorney should have impeached TFO McIntosh for falsely testifying that the defendant instructed McFarland to retrieve a safe from his apartment.  [*Id.*] This claim also fails because Duerson has not shown that Hughes' actions were unreasonable.

Duerson argues that counsel did not properly impeach TFO McIntosh's testimony regarding the jail call recording, but he fails to explain how exactly she could have questioned the officer's credibility more than she did.  After playing the recording of the co-defendants' conversation, Hughes asked TFO McIntosh if he would agree that "whether it says safe or a vase, there was no instruction . . . by Mr. Duerson for Ms. McFarland to take the safe to her house?"  [Record No. 112, p. 142]  The defendant has not demonstrated that Hughes' decision not to pursue further impeachment constitutes ineffective assistance.  *See McGowen v. Quarterman*, No. H-07-00655, 2008 WL 8053513, at *10 (S.D. Tex. Mar. 26, 2008) (finding that counsel was not ineffective for "failing to pursue . . . additional cross examination" after having already impeached a witness).

Notwithstanding Duerson's failure to demonstrate unreasonable performance, this claim will be denied as insufficiently alleged.  The Magistrate Judge correctly found that Duerson's "vague and conclusory" claim that Hughes' failure to impeach TFO McIntosh violated the defendant's "constitutional due process rights" was insufficient for purposes of § 2255.  [Record No. 212, p. 18 (citing *Robinson v. United States*, 582 F.Supp.2d 919, 926 (N.D. Ohio 2008))]  Because the defendant has not specified how Hughes' questioning of TFO McIntosh deprived him of a constitutional right, his eighth claim fails.

### 9.  Absence of Counsel During Pre-Trial Stage

Finally, Duerson alleges that trial counsel provided constitutionally ineffective assistance because she did not "fully prepare [for] and investigate [his] case."  [Record No. 167, p. 9]  But Duerson has not shown how Hughes' preparation was inadequate or how further preparation would have changed the outcome at the trial.

The defendant relies on statements from Hughes made during a hearing regarding the defendant's request to continue trial to support his claim that she was unprepared.  [*See* Record Nos. 34, 36, 39.]  During this hearing, Hughes requested additional time to ensure that she could thoroughly review discovery with the defendant.  [Record No. 114, p. 7]  But as Magistrate Judge Atkins correctly noted, these statements are largely irrelevant because her request for a continuance was granted and Hughes was given an extra month to prepare for trial.  [Record Nos. 39, 212, p. 18]

Additionally, Duerson has not demonstrated how this claim, if true, prejudiced the outcome of his case.  Conclusory allegation that an attorney's efforts "fail[ed] to subject the prosecutors [sic] case to meaningful adversarial testing" is insufficient to demonstrate ineffective assistance.  [Record No. 167, p. 9]  *See Muniz v. Quarterman*, No. C-07-76, 2007 WL 1522625, at *11 (S.D. Tex. May 23, 2007) ("Petitioner has presented no more than conclusory allegations that his trial counsel rendered ineffective assistance by failing to prepare an adequate defense.  Without more, this Court cannot grant habeas relief.") (citation omitted).

Duerson has not identified any errors by Hughes that entitle him to relief and his claim that she committed errors "due to her lack of investigation" fails.  [Record No. 215, p. 15]

## C.  Ineffective Assistance of Appellate Counsel

Duerson also alleges that Rapp provided ineffective assistance during his sentencing hearing and on appeal.   [Record Nos. 167, p. 12, 177] "[A]n appellate attorney is constitutionally ineffective only if (1) the attorney acted unreasonably in failing to discover and raise nonfrivolous issues on appeal and (2) there is a reasonable probability the defendant would have prevailed on appeal if his attorney had raised the issue."  *Holden v. Mackie*, No. 14-13701, 2019 WL 5696843, at *9 (E.D. Mich. Nov. 4, 2019) (citing *Smith v. Robbins*, 528 U.S. 259, 285 (2000)).   Here, Duerson has not identified any nonfrivolous issues that his attorney failed to raise, nor has he established that counsel's actions prejudiced him on appeal.

### 1.  Failure to Appeal Prosecutorial Misconduct

Duerson claims that his attorney was ineffective by failing to appeal alleged prosecutorial misconduct that occurred at his trial.  But this claim fails because he has not alleged a viable theory of prosecutorial misconduct as discussed above.  Because any objection to the prosecutor's statements would have been unsuccessful, Duerson cannot claim that Rapp was ineffective for failing to raise the issue on appeal.  As Magistrate Judge Atkins correctly noted, Duerson cannot demonstrate that Rapp was ineffective for failing to appeal alleged prosecutorial misconduct committed during trial because attorneys "[are] not required by the Constitution to raise frivolous . . . arguments to avoid a charge of ineffective representation." *Chapman v. United States*, 74 Fed. App'x 590, 593 (6th Cir. 2003).

### 2.  Failure to Appeal Ineffective Assistance of Trial Counsel

Next, Duerson contends that Rapp was ineffective by failing to raise the issue of Hughes' ineffective assistance on appeal.  [Record No. 167, p. 12]  However, claims of inffective assistance ordinarily must be brought in a § 2255 motion rather than on direct appeal.

- 24 -

*See Massaro v. United States*, 538 U.S. 500, 504 (2003); *United States v. Sullivan*, 431 F.3d 976, 986 (2005).  Further, Duerson cannot demonstrate that Rapp was ineffective for failing to argue that his trial attorney provided ineffective assistance because none of the defendant's claims of ineffectiveness committed by Hughes have merit.

### 3.  Failure to Appeal the Sentence

Duerson argues that Rapp was ineffective for failing to appeal issues related to his sentence.  [Record No. 177]  He first asserts that he was unable to review his PSR with his attorney and, as a result, effectively proceeded in a *pro se* capacity during his sentencing hearing.  But Duerson's account of the facts are contradicted by the record.

During Duerson's sentencing hearing, Rapp informed the Court that the defendant had reviewed his PSR with his previous attorney (Wohlander), and Duerson indicated that he was satisfied with the review.  [Record No. 116, pp. 2-3]  Duerson's in-court statement "carr[ies] a strong presumption of verity" and undermines his claim that he prepared for his sentencing hearing without the assistance of counsel.  *United States v. Torres*, No. 6:17-CR-40, 2022 WL 983146, at *8 (E.D. Ky. Mar. 30, 2022) (quoting *Blackledge v. Allison*, 431 U.S. 63, 73-74) (1977)).

Duerson also argues that Rapp should have appealed the upward departure applied to his sentence.  [Record No. 177, pp. 1-2]  He argues that the Court erred in relying on prior charges that did not result in a conviction when applying the upward departure and that Rapp should have raised this purported error on appeal.  But Duerson cannot show that Rapp's actions were unreasonable regarding this issue.

Rapp effectively litigated the issue in the defendant's Sentencing Memorandum and at Duerson's sentencing hearing.  [Record Nos. 90, 116, pp. 10-11]  Counsel was not required

appeal the Court's decision to apply the upward departure after concluding that an appeal regarding the issue would not be successful. *See Gates v. Lafler*, No. 2011 WL 4502829, at *8 (E.D. Mich. Sept. 28, 2011) ("Appellate counsel's decision not to advance weaker arguments and instead to focus on those more likely to prevail is not evidence of ineffective assistance of counsel.") (citation omitted).

But even if Rapp acted unreasonably regarding this contention, the defendant cannot show prejudice. The outcome of Duerson's appeal would not have differed but-for Rapp's decision because the Court did not abuse its discretion in relying on dismissed conduct in evaluating his history and characteristics and imposing an appropriate sentence. The Court addressed the merits of his substantive claims in the Order granting the government's motion for an upward departure, expressly mentioning that relying on dismissed conduct is proper under both the Sentencing Guidelines and Sixth Circuit precedent. [Record No. 98 (citing U.S.S.G. § 4A1.3(a)(1)(E))] *See United States v. Hererra-Zuniga*, 571 F.3d 568, 588 (6th Cir. 2009) (noting that a Court may consider "prior similar adult conduct not resulting in criminal convictions" when determining whether a departure is necessary) (citation omitted)); *see also United States v. Lucas*, 670 F.3d 784, 790 (7th Cir. 2012) ("A district court may consider a wide range of conduct at sentencing, including acquitted conduct and dismissed offenses.").

The Court reiterated during Duerson's sentencing hearing that relying on the dismissed charges was proper both because the conduct charged "is similar to other conduct that is reflected in his presentence report" and because the defendant did not "file specific objections to the factual information contained in the criminal history section." [Record No. 116, p. 30] Because Rapp would not have been able to successfully appeal the Court's decision to consider

"prior similar adult conduct" in calculating the defendant's sentence, his counsel was not ineffective by failing to do so.  U.S.S.G. § 4A1.3(a)(1)(E).

### D.  Cumulative Error

Duerson also argues that he is entitled to relief because the "accumulation of errors in this case violated [his] right to due process."  [Record No. 167, p. 14]

A petitioner seeking habeas relief can assert a cumulative error claim, contending that "even if none of the trial errors he alleges warrants habeas relief individually, their collective effect violated his constitutional rights."  *Getsy v. Mitchell*, 495 F.3d 295, 317 (6th Cir. 2007). But here, "[Duerson's] cumulative-error claim . . . fails because there are simply no errors to accumulate."  *Id.*  Duerson has failed to establish that the decisions of his trial and appellate attorneys violated his constitutional rights, either individually or in the aggregate.  Thus, Magistrate Judge Atkins correctly concluded that Duerson's cumulative error claim should be denied.

### IV. Evidentiary Hearing

Duerson has filed two separate motions requesting an evidentiary hearing.  [Record Nos. 192, 202]  In support of his first motion, Duerson claims that a hearing is necessary because Rapp misrepresented the nature of their communications occurring throughout the sentencing and appellate process.  [Record No. 192]  Duerson claims in his second motion that he is entitled to a hearing to address his allegations "concerning defense counsel's lack of investigation and deficient performance."  [Record No. 202]

Section 2255 provides that, "unless the motion and files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall . . . grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with

respect thereto." 28 U.S.C. § 2255(b). The Sixth Circuit has recognized that when a movant alleges facts that entitle him to relief, "a district court may only forego a hearing where 'the petitioner's allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact.'" *MacLloyd v. United States*, 684 F. App'x 555, 559 (6th Cir. 2017) (citation omitted).

As an initial matter, Duerson's claims throughout his § 2255 motion that his case would have turned out differently but-for his attorneys' actions are legal conclusions, not allegations of fact, and as such do not warrant an evidentiary hearing. [*See, e.g.,* Record No. 167, pp. 5-9, 11.] Additionally, Duerson is not entitled to an evidentiary hearing because his factual allegations are contradicted by the evidence in the record.

For example, trial records reveal that Hughes effectively responded to the admission of the jail call recording during cross examination and in her closing argument, which undermines the defendant's first claim that Hughes did not respond to the admission of the recording. [*See* Record Nos. 94, pp. 106-07, 95, p. 142, 163, p. 2.] Duerson contends that an evidentiary hearing is needed to determine the contents of the recording, but as was explained previously, whether he mentioned a vase or a safe did not affect the outcome of his case and does not disturb the Court's conclusion regarding his ineffective assistance of counsel claim. [Record No. 215, pp. 1-2] The admissibility of the recording is a question of law that must be decided by the Court and, therefore, is not properly raised at an evidentiary hearing.

The defendant's conclusory allegations that he was denied the presence of counsel during the pretrial period similarly do not justify holding an evidentiary hearing. As explained above, Duerson's reliance on Hughes' statements at a pretrial hearing that she needed more time to prepare is misplaced. Her statements occurred one month before his trial began and

have little bearing on his claim that Hughes was unprepared for trial.  [*See* Record Nos. 34, 39, 114.]

The defendant's request for an evidentiary hearing regarding his claims of ineffective assistance of appellate counsel also will be denied.  Duerson's assertion that he was unable to review his PSR with counsel is flatly contradicted by his contrary statement during the sentencing hearing.  [*See* Record No. 116, p. 3.]  And the defendant has failed to provide any evidence in support of his claim that Rapp failed to meet with him to discuss his appeal.  In fact, Duerson attaches a letter from Rapp which states that counsel met with the defendant in preparing for the defendant's appeal.  [*See* Record No. 193-1, p. 1.]  Because Duerson has failed to present any reliable factual allegations demonstrating that he is entitled to relief, his requests for an evidentiary hearing will be denied.

### V.  Motion to Amend

Finally, Duerson has filed a second motion to amend his § 2255 motion.  [Record No. 216]  He seeks to add a claim alleging that Hughes was ineffective for failing to file a motion to suppress evidence from McFarland's apartment, which he claims was seized in violation of his rights under the Fourth Amendment.  [*Id.* at p. 1]  Duerson contends that he did not initially include his claim regarding the motion to suppress because he believed that it lacked merit, and that he now seeks to add the claim in good faith.  [*Id.* at p. 2]

Duerson's motion to further amend his § 2255 petition will be denied because granting the motion would impose an undue burden on the government and because his proposed amendment lacks merit.  Rule 15 of the Federal Rules of Civil Procedure provides that a party may amend its pleading with "the opposing party's written consent or the court's leave."  Fed. R. Civ. P. 15(a)(2).  "The Court should freely give leave when justice so requires."  *Id.*  The

Sixth Circuit has identified the following four factors for courts to consider when determining whether the interests of justice support granting a motion to amend: "[u]ndue delay in filing, lack of notice to the opposing party, bad faith by the moving party, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party, and futility of amendment." *Coe v. Bell*, 161 F.3d 320, 341 (6th Cir. 1998).

Duerson filed his § 2255 petition on October 20, 2022.  [Record No. 167] Over four months have passed since that date, and over three months have passed since the Court granted the defendant's previous motion to amend his § 2255 petition.  [Record No. 179]  The defendant's delay weighs against granting his motion to amend.  Additionally, granting the defendant's motion to amend would prejudice the United States because over two months have passed since the government responded to the defendant's § 2255 petition.  [Record No. 187] And while the claim Duerson seeks to add to his § 2255 petition is not duplicative of the claims he currently asserts, he has failed to show that his claim that Hughes was ineffective for failing to pursue a motion to suppress would be successful.  Because granting the defendant's request to amend his § 2255 petition would prejudice the United States and because he has not shown that his new claim has merit, his motion to amend will be denied.

## VI.  Certificate of Appealability

The Court must issue or deny a Certificate of Appealability when it enters a final order that is adverse to the movant in a § 2255 proceeding.  *See* Rule 11 of the Rules Governing § 2255 Proceedings; 28 U.S.C. § 2253(c)(1)(B).  A Certificate of Appealability may be issued only when the defendant has "made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  To satisfy this burden, the defendant must show that reasonable jurists could debate whether the petition should have been resolved in a different

way or that the issues involved were "adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4) (1983)).

Reasonable jurists would not debate the Court's conclusions here. Hughes effectively represented Duerson at trial. But to the extent any of her actions can be questioned, her decisions did not prejudice the defendant. Similarly, Rapp acted reasonably in representing the defendant during the sentencing hearing and on appeal. Duerson's attorneys were not required to represent him in *precisely* the way he now desires, particularly when he asks them to advance arguments that are meritless. The defendant has failed to rebut the "strong presumption that [his attorneys'] conduct [fell] within the wide range of reasonable professional assistance," or that the proceedings against him would have come out differently if not for their actions. *Frazier v. Huffman*, 343 F.3d 780, 794 (6th Cir. 2003). Because his arguments are clearly without merit based on evidence in the record, no Certificate of Appealability will issue.

## VII. Conclusion

For the reasons set out above, is hereby

**ORDERED** as follows:

1.      Except as noted, the Magistrate Judge's Report and Recommendation [Record No. 212] is **ADOPTED** and **INCORPORATED** here by reference.

2.      Defendant/Movant Duerson's motion to vacate, correct, or set aside his sentence pursuant to 28 U.S.C. § 2255 [Record No. 167] is **DENIED**. His claims are **DISMISSED**, with prejudice, and **STRICKEN** from the docket.

3.      A Certificate of Appealability will not issue.

4.     Defendant/Movant Duerson's motions for an evidentiary hearing [Record Nos. 192, 202] are **DENIED**.

5.     Defendant/Movant Duerson's second motion to amend his § 2255 petition [Record No. 216] is **DENIED**.

Dated: February 27, 2023.

Danny C. Reeves, Chief Judge
United States District Court
Eastern District of Kentucky